# 2004 DTA 78

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGION JUDICIAL DE SAN JUAN
PANEL I**

DELIA MARGARITA GOMEZ RODRIGUEZ T/C/C
DELIA G. GOMEZ T/C/C DELIA G. DAVILA
*EX PARTE*
Peticionaria

Núm. KLCE-03-01305

San Juan, Puerto Rico, a 12 de marzo de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
y los Jueces González Rivera y Rivera Martínez

Rivera Martínez, Juez Ponente

■■■■■■■■■■

## TEXTO COMPLETO DE LA SENTENCIA

El 23 de octubre de 2003, Delia Margarita Gómez Rodríguez (en adelante la peticionaria), presentó recurso de *certiorari* solicitando la revisión de la Resolución dictada el 16 de septiembre de 2003 en corte abierta y contenida en la Minuta notificada el 24 de septiembre de 2003 por el Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso *Ex Parte* Delia Margarita Gómez Rodríguez t/c/c Delia G. Gómez t/c/c Delia G. Dávila, Civil Núm. KJV03-1385. En la misma, el Tribunal de Primera Instancia declaró sin lugar la Petición de Protocolización y Adveración de Testamento Ológrafo presentada y determinó que el testamento era nulo "*Ab Initio*" por contener una palabra tachada no salvada ni iniciada por la testadora.

Luego del análisis del derecho aplicable, así como del escrito de las partes, se revoca la Resolución recurrida.

## I

El 8 de julio de 2003, la peticionaria presentó una Petición de Adveración y Protocolización de un Testamento Ológrafo suscrito por su hermana, doña Gloria Magdalena Gómez Rodríguez. Junto con la petición acompañó el certificado de defunción de la causante, la Certificación Negativa del Registro de Testamentos del Tribunal Supremo de Puerto Rico y el manuscrito original.

El Tribunal de Primera Instancia señaló la vista de adveración y protocolización para el 16 de septiembre de 2003. A la vista compareció el cónyuge supérstite de la testadora, don Alejo Ríos, y don Juan A. Gómez Rodríguez, hermano de la testadora, así como tres testigos que habrían de identificar la letra y firma de la testadora. La representante legal de la peticionaria informó la dirección del Sr. José Manuel Bermúdez Gómez, otro de los hermanos de la testadora, quien reside en Nueva York, e indicó que éste tenía conocimiento del referido señalamiento de vista de adveración y protocolización. Debido a que el referido hermano de la testadora reside en los Estados Unidos, el Tribunal de Primera Instancia, de conformidad con el Artículo 551ª del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2280a, solicitó la presencia de la Fiscal, Lic. Damaris Torres Santiago. La representante del Ministerio Público se opuso a la petición de adveración y protocolización, planteando que el testamento era nulo "*ab initio*" por contener una palabra tachada, no salvada ni iniciada por la testadora. El Tribunal de Primera Instancia acogió la posición de la Fiscal y declaró sin lugar la petición de adveración y protocolización de testamento ológrafo instada por la peticionaria.

El 23 de octubre de 2003, la peticionaria presentó recurso de *certiorari*, a través del cual solicitó la revisión del dictamen desestimatorio emitido por el Tribunal de Primera Instancia, señalando el siguiente error:

"*Erró el Tribunal de Primera Instancia al denegar la adveración y protocolización del testamento ológrafo de Doña Gloria Magdalena Gómez Rodríguez, sin haber escuchado a los testigos que identificarían la letra y firma de la testadora y determinar que el mismo es nulo 'ab initio' por dicho manuscrito contener una palabra tachada no salvada o iniciada por la testadora.*"

Mediante resolución de 14 de noviembre de 2003, este Tribunal concedió 20 días a los Sres. Alejo Ríos Martínez, Juan A. Gómez Rodríguez y José Manuel Bermúdez Gómez y a la Fiscal Damaris Torres Santiago de

la Fiscalía de San Juan, para expresarse en torno al recurso de *certiorari* presentado por la peticionaria. En cumplimiento con dicha Orden, compareció la Oficina del Procurador General, en representación de los intereses defendidos ante el Tribunal de Primera Instancia por el Ministerio Público e informó que coincide con la parte peticionaria en que procede la revocación del dictamen de instancia. ▮

El Artículo 627, 31 L.P.R.A. sec. 2143, dispone que se llama ológrafo el testamento cuando el testador lo escribe por sí mismo en la forma que se determina en el Artículo 637, 31 L.P.R.A. sec. 2161. ▮ Este último artículo dispone:

*"El testamento ológrafo sólo podrá otorgarse por personas mayores de edad. Para que sea válido este testamento, deberá estar escrito todo y firmado por el testador, con expresión del año, mes, día en que se otorgue. **Si contuviere palabras tachadas, enmendadas o entre renglones, las salvará el testador bajo su firma.**"* (Énfasis suplido.)

Del precepto anterior, se puede colegir que es ológrafo el testamento cuando el testador lo escribe todo de su puño y letra y lo firma con expresión del año, mes y día en que otorga. Este testamento se distingue por el hecho de que en su otorgamiento no tienen que intervenir voluntades ajenas al testador y, también, porque es un documento autógrafo, es decir, manuscrito por el testador. José Ramón Vélez Torres, *Curso de Derecho Civil, Derecho de Sucesiones*, tomo IV, Vol. III, San Juan, Puerto Rico, Universidad de Puerto Rico, Facultad de Derecho, 1997.

En lo pertinente al caso que nos ocupa, dispone la parte final del Artículo 637 del Código Civil, *supra*, que si el testamento contuviese palabras tachadas, enmendadas o entre renglones, las salvará el testador bajo su firma. Al respecto, el Prof. Vélez Torres, en su obra *Curso de Derecho Civil, Derecho de Sucesiones*, *supra*, pág. 65, indica que:

*"La forma imperativa usada por el Código podría dar lugar a que se piense que debe seguirse un criterio restrictivo en la interpretación de esta disposición, pero la jurisprudencia y doctrina españolas convienen en distinguir diferentes casos y circunstancias. Así, si las palabras tachadas, enmendadas o entre renglones no salvadas por el testador recaen sobre algún objeto o elemento principal de la disposición testamentaria, debe producirse la nulidad del testamento. Este sería el caso si estuviera afectada la firma del testador, la fecha del testamento, o el objeto de la institución de herederos o del legatorio, el nombre del heredero o legatorio, etc. Por el contrario, si la omisión de salvar se refiere a objetos o elementos meramente accidentales del testamento, como sería el caso de meras enmiendas de estilo, no cabe la nulidad del testamento, sino que sólo se tendrán por no escritas las palabras tachadas, enmendadas o entre renglones."*

En apoyo de lo anterior, el Profesor Vélez Torres cita a varios tratadistas españoles, entre otros, a José M. Manresa, el cual, en torno al aspecto que nos ocupa, nos remite en su obra, *Comentarios al Código Civil Español*, Tomo V, a la Sentencia del Tribunal Supremo de España de 4 de abril de 1895, por ésta recoger las poderosas y concluyentes razones que sirvieron de base para establecer la doctrina legal sobre el particular. En tal sentencia, el Tribunal Supremo de España expresa lo siguiente:

*"No infringe lo dispuesto en este artículo del Código (el 688), la sentencia que no declara la nulidad de un testamento ológrafo que contenga palabras tachadas, enmendadas o entre renglones, no salvadas por el testador bajo su firma, según previene el párrafo tercero del mismo, porque, en realidad, tal omisión sólo puede afectar a la validez o eficacia de tales palabras y nunca al testamento mismo, ya que por estar esa disposición en párrafo aparte de aquél que determina las condiciones necesarias para la validez del testamento ológrafo, ya porque, de admitir lo contrario, se llegaría al absurdo de que pequeñas enmiendas no salvadas, ya en nada afectasen a la parte esencial y respectiva del testamento, vinieran a anular éste, y ya porque el precepto contenido en dicho párrafo ha de entenderse en perfecta armonía y congruencia con el artículo 26 de*

*la ley del Notariado, que declara nulas las adiciones, apostillas, entrerrenglonados, raspaduras y tachados en las escrituras matrices, siempre que no se salven en la forma prevenida, pero no el documento que las contenga, y con mayor motivo cuando las palabras enmendadas, tachadas o entrerrenglonadas no tengan importancia ni susciten duda alguna acerca del pensamiento del testador, o constituyan meros accidentes de ortografía o de pureza escrituraria, sin trascendencia alguna."* ■

Según distingue Manresa, para que sea aplicable la doctrina de excepción contenida en el fallo del Tribunal Supremo, es preciso que las tachaduras, enmiendas o entrerrenglonadas sin salvar, sean de palabras que no afecten, alteren ni varíen de modo sustancial la expresa voluntad del testador manifestada en el documento. Manresa, *Comentarios al Código Civil Español,* Tomo V, Reus. S.A., Madrid 1972, pág. 685.

Similar posición adopta el Prof. González Tejera, en su obra *Derecho Sucesorio Puertorriqueño,* Vol. II, Ramallo Bros. Printing, Inc., San Juan, Puerto Rico, 1983, págs. 127-128, en la cual, citando a Roca Sastre, ■ señala que:

*"Sobre la omisión de salvar con su firma las adiciones, etc., que el testador pueda hacer en su testamento con posterioridad al acto del otorgamiento, nos dice Roca Sastre que las consecuencias varían. Si las palabras adicionadas o cambios hechos no afectan, alteran o modifican de modo sustancial la voluntad expresada por el testador en el texto primitivo, la nulidad se reduce a las palabras o cambios no salvados, pero si, por el contrario, éstos afectan sustancialmente al testamento, la nulidad se extiende y contamina la totalidad del otorgamiento. Como indica la jurisprudencia española, sería absurdo que pequeños cambios al testamento que su autor olvide salvar puedan invalidar la totalidad del acto. En adición, debe señalarse que al enumerar los requisitos esenciales del testamento ológrafo, el Art. 637 lo hace en el párrafo segundo indicando que "para que sea válido" debe cumplirlos. El tercer y último párrafo del Artículo que regula lo relativo a tachaduras, etc., como ya indicáramos, no dispone como el anterior, que la omisión de salvar bajo la firma el cambio de que se trata invalida el testamento. De manera que la omisión sólo puede afectar lo tachado etc., excepto cuando esto sea esencial para darle sentido al acto testamentario. Por último, cabe hacer uso por analogía, de lo dispuesto en la Ley Notarial que en su Sección 8 dispone que serán nulas "las adiciones, apostillas, entrerrenglonaduras, raspaduras y testados en las escrituras matrices, siempre que no se salven al fin de éstas, con aprobación expresa de las partes y firmas de los que deben suscribir el instrumento". Por consiguiente, si bajo la Ley Notarial es nula solamente la adición, etc., no salvada, pero no el instrumento, nos parece que tampoco debe afectar el testamento en sí, el que no se salven las tachaduras, etc., que se encuentren en éste."* (Citas internas omitidas.)

De la doctrina y jurisprudencia previamente reseñada se desprende, con suma claridad, que el criterio determinante en cuanto al efecto que se le reconoce a la inobservancia del testador de no salvar o iniciar las tachaduras, enmiendas o entrerrenglones, estriba en que *"si se trata de palabras que no afecten, alteren, ni varíen en modo sustancial la expresada voluntad del testador manifestada en el testamento, entonces la nulidad queda concretada a las palabras no salvadas; en otro caso, la nulidad se extiende y contamina todo el testamento".* Véase José Puig Brutau, *Fundamentos de Derecho Civil,* Tomo V, Vol. II, Bosch, Casa Editorial, S.A., Barcelona, España, 1971, pág. 129, citando a Roca Sastre, *Anotaciones a KFPP,* I, pág. 94. El referido testamento, en lo pertinente, dispone: *"Si mi hermana Delia muere, la parte de ella será de sus dos hijas Magali y Glorita Dávila; y también **ellas** se encargarán de cuidar de nosotros en todo momento."* ■

## II

Al analizar el testamento ológrafo suscrito por Doña Magdalena Gómez Rodríguez, cuya adveración y protocolización se solicitó ante el Tribunal de Primera Instancia, forzoso es concluir que la única tachadura existente en el documento, no salvada por la testadora, no afecta en nada el contenido del documento o recae sobre un aspecto esencial del mismo.

## III

Por los fundamentos anteriormente expuestos, se expide el auto de *certiorari,* se revoca la Resolución recurrida y se devuelve el caso al Tribunal de Primera Instancia a los fines de continuar con el procedimiento, cónsono con lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2004 DTA 78

**1.** Debemos, pues, expresar nuestro reconocimiento al Procurador General y a su oficina por la honestidad y verticalidad desplegada.

**2.** Equivalente al Artículo 688 del Código Civil Español.

**3.** José M. Manresa, *Comentarios al Código Civil Español*, Tomo V, Reus, S.A. Madrid 1972, pág. 685.

**4.** Ramón M. Roca Sastre, Anotaciones KIPP, I, pág. 94.

**5.** Véase Anejo 1, pág. 5 del apéndice de la petición de *certiorari.*